IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. MARSHALL DeWAYNE WILLIAMS, | X X X X X | |
| Plaintiff, | X X | |
| vs. | X | No. 05-2176-B/V |
| AMERICAN CORRECTIONAL ASSOCIATION, et al., | X X X X | |
| Defendants. | X X X | |

ORDER ASSESSING $150 CIVIL FILING FEE
ORDER OF DISMISSAL
ORDER DENYING APPOINTMENT OF COUNSEL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

Plaintiff Marshall DeWayne Williams, Bureau of Prisons ("BOP") inmate registration number 14130-077, an inmate at the Federal Correctional Institution in Memphis ("FCI-Memphis"), filed a pro se action on behalf of the United States pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., on March 3, 2005, along with a motion seeking leave to proceed in forma pauperis and a factual affidavit. On March 31, 2005, plaintiff filed a motion seeking appointment of counsel. The Clerk shall record the plaintiff as United States of America ex rel. Marshall DeWayne Williams and the defendants as the American Correctional

Association ("ACA") and the Commission on Accreditation for Corrections ("CAC").[1]

I. <u>Assessment of Filing Fee</u>

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(b), all prisoners bringing a civil action must pay the full filing fee of $150 required by 28 U.S.C. § 1914(a).[2] The <u>in forma pauperis</u> statute, 28 U.S.C. § 1915(a), merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, plaintiff has properly completed and submitted both an <u>in forma pauperis</u> affidavit and a prison trust fund account statement. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that the plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust fund officer at plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to the plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of

---

[1]    Ordinarily, complaints pursuant to the FCA are to be filed under seal. 31 U.S.C. § 3730(b)(2). Because the complaint filed by this prisoner plainly does not state a claim, and because there appears to be no basis for concern that the defendants could retaliate against the plaintiff for commencing this action, no useful purpose would be served by filing this complaint under seal.

[2]    Because this complaint was filed prior to March 7, 2005, the new $250 civil filing fee is inapplicable.

2

Court. If the funds in plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the plaintiff's account and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to plaintiff's account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $150.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify plaintiff's name and the case number on the first page of this order.

3

If plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined he shall provide the officials at the new prison with a copy of this order.

If the plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including dismissal of this action or a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at plaintiff's prison. The Clerk is further ORDERED to forward a copy of this order to the warden of FCI-Memphis to ensure that the custodian of the plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The Clerk shall not issue process or serve any papers in this case.

II. <u>Analysis of Plaintiff's Claims</u>

The complaint alleges that the BOP operates approximately one hundred seventy (170) prisons throughout the United States, and that each of these facilities "voluntarily seek 'accreditation by the Commission on Accreditation for Corrections by demonstrating its compliance with nationally established standards.'" Compl., p.

3, ¶ 2. ACA officials, for a fee, inspect the BOP facilities to ensure that the ACA's mandatory compliance requirements are adhered to. Id., ¶ 3. The plaintiff alleges that, "[a]s a matter of course, the ACA engages in sham inspections, maintains fraudulent records, and routinely pass institutions for ACA compliance and accreditation when they are not in compliance with its standards. Specifically, these acts are done to defraud the government and taxpayers out of continued 'inspection fees.'" Id., ¶ 4 (emphasis omitted).

The complaint asserts three claims. The first claim alleges that the defendants, and their agents, violated 31 U.S.C. § 3729(a)(2) by repeatedly approving FCI-Memphis for accreditation despite the fact that the facility was in clear violation of specified ACA codes. The second claim contends that the defendants, and their agents, knowingly conspired to defraud the government by having a false or fraudulent claim allowed or paid in violation of 31 U.S.C. § 3729(a)(3) through maintaining false records or statements. The third claim states that the defendants, and their agents, violated 31 U.S.C. § 3729(a)(2) by repeatedly approving the United States Penitentiary at Leavenworth, Kansas ("USP-Leavenworth") for accreditation despite the fact that the facility was in clear violation of specified ACA codes.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

>     (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
>     (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B). Certain aspects of plaintiff's complaint are subject to dismissal.

As a preliminary matter, the plaintiff's filing does not appear to comply with 31 U.S.C. § 3730(b)(2), which requires that a private individual who maintains a civil action pursuant to the FCA must file, along with the complaint, "written disclosure of substantially all material evidence and information the person possesses." In this case, the complaint is accompanied by an affidavit from the plaintiff that asserts, without elaboration and without any evidence whatsoever, that he "has personal knowledge of each and every violation alleged in the complaint" and that "each and every factual statement asserted in the complaint is true and correct to the best of Plaintiff's/Respondent's ability." The complaint and its accompanying affidavit provide no evidence that the plaintiff has any personal knowledge of the terms of any contract between the BOP or any BOP facility and the defendants, the procedures used by the defendants in connection with their inspections of any BOP facility, the defendants' recordkeeping, or any conspiracy between the defendants and their agents. Instead, it can be surmised that the plaintiff was a prisoner at FCI-Memphis and USP-Leavenworth, had personal knowledge of what he contended

6

were the substandard conditions at those facilities and, on the basis of that knowledge, speculated that something must be amiss in the manner in which the defendants conducted their certification inspections.

Williams's lack of personal knowledge is not a trivial deficiency. Pursuant to 31 U.S.C. § 3730(b)(5), "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." Thus, permitting this pro se prisoner to maintain a qui tam action in a matter in which he has no valuable information precludes a later lawsuit by a bona fide whistleblower.

The complaint does not allege a viable claim under 31 U.S.C. § 3729(a)(2), which provides as follows:

Any person who—

. . . .

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government . . . ;

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person.

In this case, the "claim" at issue would be the defendants' request for payment for their inspections and certification. 31 U.S.C. § 3729(c). The false record or statement presumably consists of

7

inspection reports and certifications. However, the Sixth Circuit recently clarified that, under § 3729(a)(2), "liability attaches only where the claim itself is false or fraudulent and the false record or statement is being used 'to get' that false claim paid. Put another way, a false statement or record within a true claim is not actionable under the FCA." United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc., 400 F.3d 428, 443 (6th Cir. 2005); see also id. at 444 ("[W]e conclude that the FCA imposes liability only for false statements or conduct which are material to a false or fraudulent claim to receive money or property from the Government or reduce an obligation owed to it."). A false statement is material if it has a natural tendency to influence, or is capable of influencing, the decisionmaking body to which it is addressed. Id. at 445-47.

Although a complaint that alleged that the defendants presented invoices to the government for inspections they did not perform would arguably state a claim under the FCA, this complaint contains no such allegations. The complaint also does not allege that the government was willing to pay for the defendants' inspections only upon receipt of a certification despite the fact that the requirements for the certification had not been satisfied. Instead, the complaint, construed liberally, alleges only that (i) certain BOP facilities were certified even though the ACA's standards for certification had not been satisfied and (ii) the

8

defendants submitted invoices to the government for those inspections and certifications. These allegations are, at most, false statements within true claims and, therefore, they are not actionable under the FCA. Accordingly, the Court DISMISSES claims 1 and 3, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted.

Similarly, the complaint also does not allege a viable claim under 31 U.S.C. § 3729(a)(3), which provides as follows:

Any person who—

. . . .

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid . . . ;

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person.

As previously noted, the complaint does not allege the existence of a false or fraudulent claim; instead, the most it alleges is a false statement within a legitimate claim.

The complaint also makes clear that the plaintiff has no personal knowledge of a conspiracy. As the Sixth Circuit has noted in another context, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state . . . a claim." Gutierrez v. Lynch, 826 F.2d

9

1524, 1538 (6th Cir. 1987) (dismissing § 1983 conspiracy claim); see also Brooks v. American Broadcasting Cos., 932 F.2d 495, 499 (6th Cir. 1991); Jaco v. Bloechle, 739 F.2d 239, 245 (6th Cir. 1984) (dismissing § 1985 conspiracy claim).

Accordingly, the Court DISMISSES claim 2, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted.

As the case is being dismissed, the motion seeking appointment of counsel is DENIED.

### III. Appeal Issues

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision in forma pauperis. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. Accordingly, it would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, yet has sufficient merit to support an appeal in forma pauperis. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case

10

for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not taken in good faith and plaintiff may not proceed on appeal <u>in forma pauperis</u>.

The final matter to be addressed is the assessment of a filing fee if plaintiff appeals the dismissal of this case.[3] In <u>McGore v. Wrigglesworth</u>, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, the plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in <u>McGore</u> and § 1915(b).

---

[3] Effective November 1, 2003, the fee for docketing an appeal is $250. <u>See</u> Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

> Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

11

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by this plaintiff, this is the first dismissal of one of his cases as frivolous or for failure to state a claim.

IT IS SO ORDERED this  26th  day of May, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 5 in case 2:05-CV-02176 was distributed by fax, mail, or direct printing on May 27, 2005 to the parties listed.

---

Marshall DeWayne Williams
FCI-MEMPHIS
14130-077
P.O. Box 34550
Memphis, TN 38184--055

Honorable J. Breen
US DISTRICT COURT